| |
|---|
| **Fortress Credit Corp. v Cohen** |
| 2024 NY Slip Op 33509(U) |
| October 3, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 651498/2024 |
| Judge: Joel M. Cohen |

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

-------------------------------------------------------------------------------X

| | |
|---|---|
| FORTRESS CREDIT CORP. | **INDEX NO.**     651498/2024 |
|             Plaintiff, | |
| | **MOTION DATE**     03/25/2024 |
|     - v - | |
| CHARLES S. COHEN, | **MOTION SEQ. NO.**     001 |
|             Defendant. | **DECISION + ORDER ON MOTION** |

-------------------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 38, 39

were read on this motion for        SUMMARY JUDGMENT IN LIEU OF COMPLAINT        .

Plaintiff, Fortress Credit Corp. ("Plaintiff"), seeks summary judgment in lieu of complaint under CPLR 3213 to recover $187,250,000, together with costs, legal fees and expenses, under a guaranty signed by Defendant Charles S. Cohen ("Defendant") to ensure repayment (in part) of a loan made to Cohen Realty Enterprises LLC ("CRE") and related entities (with CRE, the "Borrowers") in the original aggregate principal amount of $533,641,618.47 (NYSCEF 5).  For the reasons set forth below, Plaintiff' motion is **granted**. Defendant's cross-motion to dismiss is **denied** and his counterclaims are dismissed.[1]

----

[1]  Defendant's argument that he was not properly served is without merit.  "Parties can contractually agree to other methods of service beyond those set forth in the CPLR, and a contract provision designating a party's service agent is valid" (*GSO RE Onshore LLC v Sapir*, 29 Misc 3d 1234(A), at *4 (NY County Sup Ct 2010]; *see also Orix Credit All., Inc. v. Fan Sy Prods., Inc.*, 215 AD2d 113, 113-14 [1st Dept 1995]).  Here, the parties agreed that service via email to Defendant Cohen would be an effective form of service (NYSCEF 5 § 14.24). Plaintiff sent Defendant an email notifying him of the motion and the completion of service of process on March 26 – more than 30 days before the return date of May 2 – provided adequate notice.

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

**Page 1 of 10**

## FACTUAL BACKGROUND

The basic facts regarding the parties' contractual relationship are undisputed. On September 15, 2022, Plaintiff executed a Loan Agreement with the Borrowers (NYSCEF 5). The Loan Agreement included an Initial Term Loan of $507,157,367.09, and also funded certain Additional Expense Advances (*id.* at 1). The maximum loan amount was $533,641,618.47 (*id.*). The Loan Agreement defined Defendant Charles S. Cohen as Personal Guarantor and named Cohen Realty Enterprises Holdings LLC as a Guarantor (*id.*).

The Loan Agreement required Borrowers to make payments pursuant to a loan schedule (*id.* § 2.3[a]). Failure to pay any scheduled amount of principal or interest when due would constitute an Event of Default (*id.* §§ 9.1[a]). The Loan Agreement allowed Plaintiff to accelerate the entire Loan upon default (*id.* §§ 9.2[a], 9.3).

The Guaranty at issue in this case was executed by Plaintiff and Defendant on the same day as the Loan Agreement (*id.* at 31, 33; NYSCEF 4). Under the Guaranty, Defendant "unconditionally and irrevocably guarantee[d] to Agent . . . the payment of the Obligations of Borrowers and the Credit Parties as and when the same shall be due and payable . . . until all of the Guaranteed Obligations shall have been fully and indefeasibly paid" (NYSCEF 4 § 1). The maximum amount for which Defendant would be liable under the Guaranty was $187,250,000 (NYSCEF 4, at 2).

The Guaranty incorporates the meaning of "Event of Default" set forth in the Loan Agreement and enumerates several more Events of Default under the Guaranty itself (*id.* § 5).

---

Furthermore, the fact that Defendant submitted to the Court a detailed memorandum in opposition to Plaintiff's motion indicates that Defendant was not prejudiced by the type or timing of the service in question.

651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.                      Page 2 of 10
Motion No.  001

2 of 10

Defendant would also be liable for Plaintiff's costs and expenses, including attorneys' fees incurred in enforcing Plaintiff's rights under the Guaranty (*id.* § 6[n]). Additionally, the Guaranty requires Defendant to furnish certain financial statements and information until the Loan is satisfied (*id.* §§ 6[f]; 6[t]).

Between May 12, 2023, and December 21, 2023, the parties executed four amendments to the Loan Agreement, agreeing to extend the payment schedule and defer payments (NYSCEF 20, Schedule 2.3; NYSCEF 21-23; NYSCEF 16 ¶ 9). The parties entered a Pre-Negotiation Agreement ("PNA") on November 30, 2023, indicating they were "willing to have discussions … regarding the status of the Loan" and "preserv[ing] the status quo legally during" the discussions "so that no Party has given up or gives up any rights or incurs any obligations unless and until a further written agreement is executed and delivered by such Party" (NYSCEF 24, at 1-2). Any agreement under the PNA would be in a signed writing (*id.* ¶ 2).

Between December 13 and December 14, 2023, representatives of CRE and Fortress exchanged emails in an attempt to agree upon a further extension of the "scheduled am[ortization] holiday" into 2025 (NYSCEF 25, at 7). Those emails ended in an exchange of terms between Randall Shy (Fortress's representative) and Rob Horowitz, a representative for Defendant and his companies, and a statement by Shy that he would "get th[e terms] in f[r]ont of senior management" and "get [Kirkland & Ellis] re-working on the interim agreement so that that can be signed tomorrow or Monday" (*id.* at 2-3). Horowitz responded, "This works. We are good to go" (*id.*). Shy replied, "Thank you/same. [Kirkland & Ellis] will be in touch w[ith] Lisa tomorrow" (*id.*).

Despite the foregoing exchange, no written agreement was ever signed extending the payment due date beyond February 2024. Plaintiff issued a letter to CRE noticing default on

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

**Page 3 of 10**

3 of 10

March 11, 2024 (NYSCEF 7). It noticed acceleration of the loan and demanded payment by Defendant under the Guaranty on March 19, 2024 (NYSCEF 8). Plaintiff filed this action on March 25, 2024, seeking summary judgment in lieu of complaint under CPLR 3213 based on the Guaranty (NYSCEF 1-2).

## LEGAL ANALYSIS

Under CPLR 3213, a party may commence an action by motion for summary judgment in lieu of complaint when the action is "based upon an instrument for the payment of money only or upon any judgment[.]" An "instrument for the payment of money only" is one that "requires the defendant to make a certain payment or payments and nothing else." (*Seaman-Andwall Corp. v Wright Mach. Corp.*, 31 AD2d 136, 137 [1st Dept 1968]; *Weissman v Sinorm Deli, Inc.*, 88 NY2d 437, 444 [1996]).

Generally, "[a]n unconditional guaranty is an instrument for the payment of 'money only' within the meaning of CPLR 3213" (*Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro*, 25 NY3d 485, 492 [2015]). "To meet its prima facie burden on its summary judgment motion, [a movant under CPLR 3213] must prove 'the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty'" (*id.*). Once a plaintiff makes out a prima facie showing, the burden shifts "to the defendant to submit evidence establishing the existence of a triable issue of fact with respect to a bona fide defense" (*Zyskind v FaceCake Marketing Technologies, Inc.*, 101 AD3d 550, 551 [1st Dept 2012]).

Based on the record presented, the Court finds that Plaintiff has made its prima facie showing for summary judgment in lieu of complaint, and Defendant has failed to raise triable issues of fact to warrant denial of Plaintiff's motion.

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

**Page 4 of 10**

4 of 10

First, Defendant's suggestion that relief under CPLR 3213 is precluded because reference must be made to the Loan Agreement to define default is unavailing. "[T]he fact that reference must be made to documents beyond the Guaranty does not take it out of the purview of CPLR 3213, because liability under a Guaranty necessarily depends on the existence of a third party's obligation defined in other documents" (*GSO Re Onshore LLC v. Sapir*, 29 Misc3d 1234(A) [Sup Ct NY County 2010] [citing *Bank of Am., N.A. v. Solow,* 19 Misc3d 1123(A), 2008 N.Y. Slip Op 50830(U) [Sup Ct NY County 2008], *aff'd* 59 A.D.3d 304 [1st Dept 2009]]; *see also Acquiom Agency Servs. LLC v Fox Capital LLC*, 2024 NY Slip Op 51000(U), at 3 [Sup Ct NY County 2024]). Indeed, virtually every CPLR 3213 action based on a loan guaranty will require reference to the underlying loan documents to establish a default. The notion that such reference forecloses access to CPLR 3213 is meritless.

Second, Defendants' reliance on "performance guaranty" cases (*e.g.*, *Punch Fashion, LLC v Merchant Factors Corp.*, 180 AD3d 520, 521 [1st Dept 2020]; *PDL Biopharma, Inc. v Wohlstadter*, 147 AD3d 494, 495 [1st Dept 2017]; *Manhattan Real Estate Fund, LP v Paz*, 2024 N.Y. Slip Op. 32017[U] [N.Y. Sup Ct, New York County 2024]) is misplaced. In those cases, the guarantor expressly (or at least arguably) assumed responsibility for the borrower's *non-monetary* obligations under the loan agreement, thus placing the instrument outside the "payment of money only" confines of CPLR 3213. Here, by contrast, the parties defined "Guaranteed Obligations" solely and specifically with regard to "the *payment* of the Obligations of Borrowers and the Credit Parties as and when the same shall be *due and payable* whether by lapse of time, by acceleration of maturity or otherwise" (NYSCEF 4 ¶ 1 [emphasis added]). Given that language, the follow-on reference in the Guaranty to Defendant's obligation lasting "until all of the Guaranteed Obligations shall have been fully and indefeasibly paid, performed and

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

Page 5 of 10

discharged" (*id.*) cannot reasonably be read to guarantee borrower's "performance" of non-monetary obligations in the Loan Agreement. For the same reason, Defendant's reference to the long list of potential events of default enumerated in the Loan Agreement, which include certain non-monetary performance obligations, does not transform the Guaranty into a promise to ensure performance of non-monetary obligations. The Guaranty is strictly limited to an obligation to pay money if the Borrowers fail to do so when such amounts are due and owing under the Loan Agreement. It is the paradigmatic instrument for the payment of money only.

Nor do Sections 6(f) and 6(t) of the Guaranty, which require Defendant (as a guarantor) to provide quarterly and annual financial information to Plaintiff, impact the applicability of CPLR 3213. "[T]he mere presence of additional provisions in the Guaranty does not constitute a bar to CPLR 3213 relief, provided that the provisions do not require additional performance as a condition precedent to repayment, or otherwise alter Defendant's promise of payment" (*UBS AG, London Branch v. Greka Integrated, Inc.*, 2020 WL 1957530, at *5 [SD NY 2020]; *Park Union Condominium v. 910 Union St., LLC*, 140 AD3d 673, 674 [1st Dept 2016] [finding that an instrument was within the scope of CPLR 3213 because it "required no additional performance by plaintiff as a condition precedent to payment or otherwise made defendant[s'] promise to pay something other than unconditional"]). Those ancillary provisions do not affect or limit the Guaranty's unequivocal obligation to make payment if the Borrower fails to do so when due and owing.

Third, Defendant's assertion of various equitable defenses and counterclaims – estoppel, fraudulent inducement, bad faith, prima facie tort – is unavailing. Section 3 of the Guaranty states "[t]o the extent permitted by law, Guarantor hereby irrevocably waives and agrees not to assert or take advantage of . . . any other defenses, set-offs or counterclaims which may be

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

Page 6 of 10

available to any Borrower, Credit Party or Guarantor, and any and all other defenses now or at any time hereafter available to Guarantor (including without limitation those given to sureties) at law or in equity" (NYSCEF 4, § 3[o]). Such waivers are enforceable (*Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro*, 25 NY3d 485, 493 [2015] ["Guaranties that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guaranties that are 'absolute and unconditional,' have been consistently upheld by New York courts"]; *United Orient Bank v Lee*, 223 AD2d 500, 500 [1st Dept 1996] ["As the guarantees contained waivers of all defenses other than payment, defendants were precluded from asserting claims of release"]; *Gannett Co. v. Tesler,* 177 AD2d 353, 353 [1st Dept 1991]).

Fourth, and most substantively, Defendant argues that genuine factual disputes exist as to whether there was an Event of Default under the Loan Agreement, which is the triggering event for application of the Guaranty. Although Defendant does not dispute that the borrower failed to make payments when due under the terms of the original Loan Agreement, he asserts that the agreement was effectively amended in a December 2023 email exchange between representatives of Fortress and CRE, and thus summary judgment is inappropriate at this time (NYSCEF 25). These emails discussed deferral of the repayment date under the Loan Agreement to the third quarter of 2025 in return for new Liens on several other of Defendant's properties (*id.*). In response, Plaintiff argues that the Loan Agreement, by its express terms, cannot be amended without a signed writing (NYSCEF 5 § 14.4[a]), which it claims precludes an amendment via the email exchange upon which Defendant relies.

The Court has reviewed the December emails and other documents submitted by Defendant, interpreting them in the light most favorable to Defendant as the non-moving party, and concludes that they do not as a matter of law constitute a valid and binding amendment of

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

**Page 7 of 10**

7 of 10

the Loan Agreement. Section 14.4(a) of the Loan Agreement provides unambiguously that "No amendment or waiver of any provision of [the Loan Agreement] . . . shall be effective unless the same shall be in writing and signed" (NYSCEF 5). Such provisions are regularly enforced (*e.g.*, *Nassau Beekman, LLC v Ann/Nassau Realty, LLC*, 105 AD3d 33, 39 [1st Dept 2013]; *Barry Indus. LLC v Barry Street Holdings LLC*, 2024 WL 1257205, at *2 [NY Sup Ct NY Cty Mar. 25, 2024]).

Section 14.4(d) of the Loan Agreement does not, as Defendant argues, permit acceptance of the December Emails as a viable amendment of the agreement. That provision reads as follows:

> (d) Notwithstanding anything to the contrary contained in this Section 14.4, (i) Agent and the Borrowers may amend or modify this Agreement and any other Loan Document to grant a new Lien for the benefit of the Secured Parties, extend an existing Lien over additional Property for the benefit of the Secured Parties or join additional Persons as Credit Parties, and (ii) if the Agent and the Borrowers shall have jointly identified an obvious error, ambiguity, defect, inconsistency or any error or omission of a technical or immaterial nature, in each case, in any provision of the Loan Documents, then the Agent and the Borrowers shall be permitted to amend such provision and such amendment shall become effective without any further action or consent of any other party to any Loan Document if the same is not objected to in writing by the Required Lenders within three (3) Business Days following receipt of notice thereof.

(*Id.* § 14.4[d].)

Although the purported agreement described in the December Emails *includes* the granting of a new Lien for the benefit of Secured Parties (which can be accomplished under Section 14.4(d) without a signed writing), it goes well beyond that. Most significantly, of course, the email "agreement" purportedly would excuse a payment default by the borrower and extend the payment terms by more than one year. Section 14.4(d) cannot reasonably be read to

permit such an unsigned amendment of the Loan Agreement, in derogation of the clear terms of Section 14.4(a), simply because it is joined with an otherwise lender-friendly provision adding collateral to the loan. The Court sees no ambiguity in the language of either 14.4(a) or 14.4(d) that would warrant a trial before a finder of fact. The bottom line is that under the plain language of the Loan Agreement no amendment of the loan repayment schedule—a clearly material term—is effective unless contained in a signed writing agreed by the parties. The December Emails do not, as a matter of law, constitute a signed writing as required by Section 14.4(a) of the Loan Agreement (*Eaglehill Genpar LLC v. FPCG, LLC*, 188 AD3d 527, 529 [1st Dept 2020]).

Moreover, even if the Court were to find that the December Emails were permissible *in form* to amend the Loan Agreement, the documents themselves do not suffice to create a triable factual dispute as to whether the parties actually reached an agreement to extend the payment term of the Loan Agreement into 2025. At best, the correspondence indicates that the negotiator for Fortress (Mr. Shy) had reached the point of elevating the *proposed* agreement to the level of the final decisionmaker. In the crucial email upon which Defendant principally relies, Mr. Shy says only that he will "get th[e terms] in f[r]ont of senior management" and "get [Kirkland & Ellis] re-working on the interim agreement so that that can be signed tomorrow or Monday." Although an interim Fourth Amendment was signed to extend the payment date through February 2024, there is no evidence that the proposed agreement to extend the repayment term into 2025 – which is what is necessary to avoid summary judgment in this action – was ever approved by Fortress senior management and no agreement to that effect was signed.

Finally, Plaintiff has shown entitlement to attorneys' fees under the Loan Agreement and Guaranty (NYSCEF 4 § 6[n]; NYSCEF 5 § 14.1).

**651498/2024   FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.**
**Motion No.  001**

**Page 9 of 10**

[* 9]

Accordingly, it is

**ORDERED** that Plaintiff's motion for Summary Judgment in Lieu of Complaint is **granted**; it is further

**ORDERED** that Defendant's cross-motion to dismiss is **denied**; it is further

**ORDERED** that entry and enforcement of judgment in this action is deferred pending the auction of the underlying Borrowers' collateral that is the subject of a related action pending in this Court (*Cohen Realty Enterprises Holdings LLC v Fortress Credit Corp*, 652147/2024) which may result in the satisfaction of some or all of the amount sought in this action; it is further

**ORDERED** that the parties submit a joint letter following the auction providing their respective positions as to the form and substance of judgment, if any, to be entered in this action; and it is further

**ORDERED** that Plaintiff shall serve this Order with Notice of Entry on Defendant within seven (7) days of the date of this Order.

This constitutes the Decision and Order of the Court.

| **10/3/2024** | | | | |
|---|---|---|---|---|
| **DATE** | | | **JOEL M. COHEN, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | ☐ DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

651498/2024  FORTRESS CREDIT CORP. vs. COHEN, CHARLES S.
Motion No.  001

Page 10 of 10

10 of 10